**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DOMENICO PRATICO                                   :

        Plaintiff,                              :

      v.                                            :

PHILLIP GIANNOPOULOS                    :NO.:  24-cv-2212(WB)

        Defendant.                            :

---

**BRIEF OF DEFENDANT, PHILLIP GIANNOPOULOS IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**

---

**LAW OFFICES OF JONATHAN J. SOBEL**


BY:   <u>Jonathan J. Sobel, Esquire</u>
         1500 Walnut Street, Suite 2000
         Philadelphia, PA 19102
         (215) 735 7535
         (215) 735 7539
         Mate89@aol.com

         Attorney for Defendant, Phillip Giannopoulos

## **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION……………………………………………   6

ISSUES PRESENTED FOR REVIEW………………………   6

FACTUAL BACKGROUND………………………………..   7

PROCEDURAL BACKGROUND………………………….   8

ARGUMENT………………………………………………...   9

      A.      Motion to Dismiss:  The Applicable Standard…   9

      B.      Defamation……………………………………..   11

      C.      Fraud……………………………………………   17

      D.      Motion to Strike Plaintiff's Request for
            Attorney's Fees…………………………………   21

            1.      Count I – Defamation……………………   21

            2.      Count II – Fraud…………………………   21

CONCLUSION…………………………………………….   22

# <u>TABLE OF AUTHORITIES</u>

**<u>PAGE</u>**

<u>CASES</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………                          9-10

*Bank v. Cmty. Coll. Of Phila.*, 2022 U.S. Dist. LEXIS 130155,
at \*3 (E.D. Pa. 2022)………………………………………….                              12

*Beauty Time, Inc. v. VU Skin Sys., Inc.,*
118 F.3d 140, 143-44 (3d Cir. 1997)………………………….                            20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)………..                      9-10

*Blumenstock v. Gibson,* 2022 PA Super. 339,
811 A.2d 1029, 1034 (2002)………………………………..                              18

*Braig v. Field Commc'ns*, 310 Pa. Super. 569,
456 A.2d 1366, 1373 (1983)………………………………..                              13

*Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260
(3d Cir. 2006)………………………………………………….                          10-11

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21
(3d Cir. 2011)…………………………………………………..                          10

*Computer Aid, Inc. v. Hewlett-Packard Co.,*
56 F. Supp.2d 526 (E.D. Pa. 1999)…………………………….                          14

*Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787
(3d Cir. 2016)…………………………………………………..                          10

*Equibank v. Miller*, 422 Pa. Super. 240,
619 A.2d 336, 338 (1993)……………………………………….                          21

*Garcia v. Hilton Hotels Int'l,* 97 F. Supp. 5, 9 (D.P.R. 1951)….                   16

*Gibney v. Fitzgibbon*, 547 Fed. Appx. 111, 113 (3d Cir. 2013)…                     12

*Greenberg v. McGraw*, 2017 Pa. Super. 136,
161 A.3d 976, 982 (2017)……………………………………….                          16, 17

*Hart v. Arnold*, 2005 PA Super. 328, 884 A.2d 316, 342-43 (2005).                   22

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418
(3d Cir. 1997)……………………………………………...    19

*Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 168
(3d Cir. 2014)……………………………………………..    13

*Koffman v. Smith*, 453 Pa. Super. 15, 682 A.2d 1282, 1292
(1996)……………………………………………………..    22

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)…………….    10

*Mallory v. S & S Publishers,* 168 F. Supp. 3d 760, 767
(E.D. Pa. 2016)…………………………………………….    12, 14

*Mister Donut of America, Inc. v. Constance Plus II, Inc.,*
11 Pa. D. & C. 4th 434 (Pa. Com. Pl. 1991)………………………    22

*Monge v. Univ. of Pa.,*, 2023 U.S. Dist. LEXIS 55322, at *2
(E.D. Pa. 2023)……………………………………………    12-13

*Moore v. Cobb-Nettleton*, 2005 PA Super. 426,
889 A.2d 1262, 1267 (2005)……………………………………    13

*Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010)….    13

*Pace v. Baker-White*, 432 F. Supp 3d 495, 512 (E.D. Pa. 2020)…..    13

*Pawlowski v. Smorto*, 403 Pa. Super. 71, 588 A.2d 36, 41 (1991)...    16-17

*Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80,
468 A.2d 468, 471 (1983)………………………………………    20

*Post v. Mendel,* 510 Pa. 213, 507 A.2d 351, 356 (Pa. 1986)………    16, 17

*Richmond v. McHale*, 2012 Pa. Super. 1, 35 A.3d 779, 785 (2012)..    16

*Santiago v. Warminster Township*, 629 F.3d 121, 130
(3d Cir. 2010)……………………………………………..    10

*Schanne v. Addis*, 632 Pa. 545, 121 A.3d 942, 951 (Pa. 2015)…..    15-16

*Shanks v. Alderson*, 582 A.2d 883, 866 (Pa. Super. 1990)……….    21

*Tucker v. Philadelphia Daily News*, 577 Pa. 589, 614-15,
848 A.2d 113 (2005)……………………………………………..    12

*Urland v. Merrell-Dow Pharms*, 822 F.2d 1268, 1271
(3d Cir. 1987)…………………………………………………….    20

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
898 F.2d 914, 923 (3d Cir. 1990)………………………………….    13, 14

*West Penn Allegheny Health Sys., Inc. v. UPMC*,
627 F.3d 85, 105 n. 13 (3d Cir. 2010)……………………………    16

## **STATUTES**

42 Pa. C.S.A, § 2503…………………………………………    22

42 Pa. C.S.A. § 8343…………………………………………    12

## **RULES OF COURT**

F.R.C.P. 9(b)……………………………………………………..    19

F.R.C.P. 12(b)(6)………………………………………………    *passim*

## **LEARNED TREATISES**

5B Charles A. Wright & Arthur R. Miller,
Federal Practice & Procedure § 1357 (3d ed. 2004)………………    11

5 Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1277 (3d ed. 2017)…………….    16

## INTRODUCTION

Defendant, Phillip Giannopoulos files the within Motion to Dismiss Plaintiff's Amended Complaint.  There are several bases upon which Defendant moves for dismissal of the amended Complaint.  Defendant contends plaintiff's complaint fails to state a claim upon which relief can be granted with respect to the claims of defamation and fraud.  *See* discussion, *infra.*

Secondly, the request for attorneys' fees in Count I of the Amended Complaint alleging defamation should be stricken.  Likewise, the request for attorneys' fees in Count II of the Amended Complaint alleging fraud should be stricken.

## ISSUES PRESENTED FOR REVIEW

1.      Whether this Honorable Court should grant Defendant's Motion to Dismiss Plaintiff's Amended Complaint and dismiss Count I of the Amended Complaint alleging defamation against Defendant by Plaintiff.

**Suggested Answer:  Yes.**

2.      Whether this Honorable Court should grant Defendant's Motion to Dismiss Plaintiff's Amended Complaint and dismiss Count II of the Amended Complaint alleging fraud against Defendant by Plaintiff.

**Suggested Answer:  Yes.**

3.      Whether this Honorable Court should grant Plaintiff's Motion to Strike the Amended Complaint and strike the request for attorneys' fees in Count I of the Amended Complaint alleging defamation.

**Suggested Answer:  Yes.**

4.      Whether this Honorable Court should grant Plaintiff's Motion to Strike the

Amended Complaint and strike the request for attorneys' fees in Count II of the Amended

Complaint alleging fraud.

**Suggested Answer:  Yes.**

**FACTUAL BACKGROUND**

According to plaintiff's amended complaint, Plaintiff is a tenured Professor of Neural

Sciences and the Director of the Alzheimer's Center at Temple University.  *See* Exhibit "A" –

Amended Complaint, Feb. 7, 2024, at ¶ 4.  He served as a doctoral advisor to Dr. Giannopoulos

during his doctoral program at Temple University.  *Id.* at ¶ 9.  Dr. Giannopoulos received his

Ph.D. from Temple University in 2015.  Dr. Giannopoulos used the lab and certain testing

equipment to perform studies that constituted original research which Dr. Giannopoulos used for

his doctoral dissertation at Temple University.  *Id.* at ¶ 10.

Springer Nature Academic Publishing, Inc. published two articles in which Dr. Praticò

and Dr. Giannopoulos were named as authors. *Id.* at ¶ 17.  The Articles contains Giannopoulos

Data.  *Id.* at ¶ 18.  Prior to submitting the articles to Springer Nature, Dr. Praticò spoke to Dr.

Giannopoulos about the publications.  *Id.* at ¶ 19.

In 2020, after Pubpeer criticized the Giannopoulos Data, Dr. Giannopoulos did not

challenge authorship.  *Id.*  at ¶ 23.  In 2023, Dr. Giannopoulos represented, through his attorney,

to the Associate Editor and Publisher at Springer Nature that Dr. Giannopoulos was 'unaware of

the submission and publication' of the Article, and that he did not consent to the publication of

his data. *Id.* at ¶ 24.  *See* Exhibit "B" – Letter from George Vokolos, Esquire to Gregory Baer,

Springer Nature, Jun. 8, 2023.

According to the defamation count in plaintiff's complaint, defendant's attorney as his agent, the defamatory statement by the attorney constitutes a statement by defendant. *Id.* at ¶ 32. The statement was allegedly made to Springer Nature that Defendant was unaware that he was named as an author of the Article and when he claimed that he did not consent to being in the authorship for the Article. This statement is alleged to be defamatory. *Id.* at ¶¶ 33-34. *See* Exhibit "B".

Plaintiff alleges his reputation was sullied, blackened and exposed him to contempt. The statement was alleged to lower plaintiff's estimation in the community and deter people from associating or dealing with him, including actual injury, impairment to his reputation and standing in the academic community, humiliation and mental anguish and suffering. *Id.* at ¶ 34, ¶ 35, ¶ 40.

In the fraud count, plaintiff alleges that defendant represented his data was reliable for both his thesis and for the journal article. *Id.* at ¶ 42. Dr. Giannopoulos developed the false data knowingly, and with knowledge of his deception. *Id.* at ¶ 44. In 2023, an expert used software to review the data and found it was duplicated, altered and improperly reused, suffering from a lack of authorization, mislabeled. *Id.* at ¶ 45.

Plaintiff was damaged and undermined plaintiff's scientific reputation. *Id.* at ¶ 49. Plaintiff alleges he suffered impairment to his reputation and standing in the academic community, personal humiliation and mental anguish and suffering. *Id.* at ¶ 52.

## PROCEDURAL BACKGROUND

On January 9, 2024, Plaintiff filed a lawsuit against Defendant, Phillip Giannopoulos in the Court of Common Pleas, Philadelphia County. The matter was assigned the January Term, 2024, No.: 01083. The Complaint was identified as a dispute, business tort. On February 7,

2024, Plaintiff filed an Amended Complaint. *See* Exhibit "A" – Amended Complaint, Feb. 7, 2024. The Complaint lists two (2) causes of action: defamation (Count I) and fraud (Count II).

In Count I of the Complaint alleging defamation, plaintiff seeks damages in excess of $50,000.00, "plus attorney's fees . . ." In Count II of the Complaint alleging fraud, plaintiff seeks damages in excess of $50,000.00, "plus attorney's fees . . ." *Id.*

There are four (4) exhibits attached to plaintiff's complaint: (a) emails from Plaintiff to Defendant, dated January 9, 2015, March 13, 2015, April 13, 2017, and April 16, 2017; (b) email from Plaintiff to Defendant, dated January 9, 2015; (c) Article ; and (d) article listing. *Id.*

On May 23, 2024, Defendant filed a Notice of Removal to this Honorable Court. The Court extended defendant's time for filing a response to the Amended Complaint until June 7, 2024.

## ARGUMENT

### A.   MOTION TO DISMISS: THE APPLICABLE STANDARD

Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6). If a plaintiff fails to state a claim upon which relief can be granted, the court may dismiss the action. Fed. R. Civ. P. 12(b)(6).

In order [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss . . . Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016), the Third Circuit instructed district courts to apply a three-step analysis to 12(b)(6) motions:

(a) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'"

(b) "it should identify allegation that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and

(c) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."

*Id.* at 787 (quoting *Iqbal*, 556 U.S. at 675, 679). *See Burtch,* 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

A court may consider documents "attached to or submitted with the complaint, and *any 'matters* incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v.*

*Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).[1]

## B.   DEFAMATION

In Count I of Plaintiff's Amended Complaint, he asserts a claim for defamation against Defendant, Phillip Giannopoulos in connection with a letter drafted by his attorney at the time. The putative attorney is not a party to the lawsuit.

The sum and substance of plaintiff's defamation claim in the complaint is as follows:

> 24.    Upon information and belief, in 2023, Dr. Giannopoulos represented, *through his attorney*, to the Associate Editor and Publisher at Springer Nature that Dr. Giannopoulos was 'unaware of the submission and publication' of the Article, and that he did not consent to the publication of his data.
>
> * * *
>
> 33.    Dr. Giannopoulos' made a false statement of fact when his *attorney represented* to Springer Nature Journal that Dr. Giannopoulos was unaware that he was named as an author of the Article and when he claimed that he did not consent to being in the authorship for the Article.

*See* Plaintiff's Complaint, at ¶ 24, ¶ 33 (emphasis added).  It *appears* that the defamatory communication alleged is that defendant was:  (a) unaware he was given authorship of the article; and (b) he did not consent to the authorship.  These two (2) denials supplied by the former attorney of defendant do not and could never form the basis of a claim for defamation.

A plaintiff in a defamation case has the burden of proving the following:

(a) the communication was defamatory;

(b) publication by the defendant;

(c) the communication applies to the plaintiff;

---

[1] Plaintiff has attached a series of emails and defendant's public profile, however, plaintiff did not attach a copy of the defamatory communication?  Plaintiff does reference the alleged defamatory communication.  *Id.* at ¶ 24.  *See* Exhibit "B".

(d) the recipient of the communication understands the communication's defamatory meaning;

(e) the recipient understands the communication to be intended to apply to the plaintiff;

(f) special harm resulting to the plaintiff from its publication; and

(g) abuse of a conditionally privileged decision.

42 Pa. C.S.A. § 8343. Furthermore, "[a] complaint for defamation must, on its face, identify specifically what allegedly defamatory statement were made, and to whom they were made." *Monge v. Univ. of Pa.,* 2023 U.S. Dist. LEXIS 55322, 2023 WL 2726042, at *2 (E.D. Pa. 2023) (quoting *Bank v. Cmty. Coll. of Phila.*, 2022 U.S. Dist. LEXIS 130155, 2022 WL 2905243, at * 3 (E.D. Pa. 2022).

The Court must take multiple steps to determine whether Plaintiff has adequately pled facts to support his defamation claim. The first step is to make a "threshold determination whether the challenged statements are capable of defamatory meaning." *Mallory v. S & S Publishers*, 168 F. Supp. 3d 760, 767 (E.D. Pa. 2016) (citing *Gibney v. Fitzgibbon,* 547 Fed. Appx. 111, 113 (3d Cir. 2013); *see Tucker v. Philadelphia Daily News*, 577 Pa. 598, 614-15, 848 A.2d 113 (2005) (stating that in Pennsylvania, "[i]t is the function of the court to determine whether the challenged publication is capable of defamatory meaning.") "Courts can dismiss defamation claims at the motion to dismiss stage if the statements are not capable of defamatory meaning." *Monge*, 2023 U.S. Dist. LEXIS 93073, 2023 WL 3692935, at *2 (gathering cases).

To determine whether a statement is capable of defamatory meaning, the Court considers:

(a) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and

(b) whether that meaning is defamatory in character."

*Id.* A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from association or dealing with him." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F. 2d 914, 923 (3d Cir. 1990). "Pennsylvania courts recognize that a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010).

Second, this Court must determine whether the defamatory statement is a statement of fact or opinion. "Pure opinions cannot defame." *McCafferty*, 955 F.3d at 357. Opinions based on "disclosed facts are absolutely privileged, no matter how derogatory they are." *Id.* (cleaned up) (citing *Braig v. Field Commc'ns*, 310 Pa. Super. 569, 456 A.2d 1366, 1373 (Pa. Super.1983)). But an opinion that can reasonably be understood to "imply undisclosed defamatory facts may support a cause of action based upon those unenumerated facts." *Pace v. Baker-White,* 432 F. Supp. 3d 495, 512 (E.D. Pa. 2020) (quoting *Moore v. Cobb-Nettleton*, 2005 PA Super 426, 889 A.2d 1262, 1267 (Pa. Super. 2005)). "Whether a statement is a fact or an opinion is a question of law." *Id.* (citing *Kerrigan v. Otsuka Am. Pharm.*, *Inc.,* 560 F. App'x 162, 168 (3d Cir. 2014)).

To state a claim for relief, Plaintiff must not only allege that the statement is false, but that it is also of a defamatory character. *Monge*, 2023 U.S. Dist. LEXIS 93073, 2023 WL 3692935, at *2. Plaintiff has not alleged specific facts or stated the negative implication of defendant's attorney's statement; he merely alleges that it was false.

As a threshold matter, according to the amended complaint, "[b]ecause Dr. Giannopoulos' attorney is his agent, the defamatory statement by the attorney constitutes a statement by Dr. Giannopoulos." *See* Plaintiff's Complaint, at ¶ 25. Before even ascertaining

whether the statement was defamatory or capable of having a defamatory meaning, it is unclear how defendant could be responsible for a statement in a letter that said defendant was unaware of an article's publication and did not consent to the article's publication.  *See* Exhibit "B".

While an attorney may be the agent for his client, a client should not be vicariously liable for their attorney's alleged defamatory statements since there was no evidence that the clients gave actual or apparent authority to issue those statement or ratified them.  In other words, a client should not be subject to vicarious liability for torts committed by his attorney (of which defamation is one), unless the client has someone authorized or ratified the commission of the tort.  *See Computer Aid, Inc. v. Hewlett-Packard Co.,* 56 F. Supp.2d 526 (E.D. Pa. 1999)(collecting cases).  Moreover, if the lawyer forwarded the letter, the law requires defendant to have published it.  *See* Exhibit "B".

Secondly, beyond whether the defendant can be held liable for something his attorney sends in an alleged defamatory context, the real issue is whether this statement in the attorney's letter is defamatory, i.e., lack of notice / lack of consent. Plaintiff has alleged that this statement is defamatory and whether the statement is capable of a defamatory meaning. *Mallory*, 168 F. Supp. 3d at 767. A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from association or dealing with him." *U.S. Healthcare, Inc.*, 898 F. 2d at 923.

Here, the statement attributed to Defendant's attorney is not defamatory because the attorney did not identify anything related to plaintiff.  The statements in the letter of the attorney merely indicate defendant was unaware of the article's publication and equally as such that he did not consent to the publication.  The letter does not identify Dr. Pratico as the culprit behind the article's publication without defendant's consent nor does the letter state that Dr. Pratico

knew defendant was unaware of the publication. The letter is directed to defendant's knowledge of the incidents rather than an implication of wrongdoing on the part of Pratico. The letter is not capable of a defamatory meaning. Further, there is no indication that the recipient of the attorney's letter would know or have any idea or even understand any defamatory meaning or ascribe any defamation to the letter. Simply stating that defendant did not know of the article's publication and did not consent to the articles publication does not rise to the level of the recipient's knowledge of the putative defamatory communication. Similarly, how would the recipient of the letter know that the defamation applied to Plaintiff. There is no basis for the imposition of this knowledge upon the recipient. Defendant's attorney is simply stating: (a) "my client was unaware of the article's publication"; and (b) "my client did not consent to the article's publication." Are we to *assume*, the receipt of the letter opined that if defendant did not consent and was unaware, then Plaintiff must have hidden this information and did not obtain consent for publication. This is simply too big of a leap to take and the recipient would somehow be aware that the letter applied to plaintiff.

Plaintiff's defamation claim against the Defendant must be dismissed because he has not pled facts that support a claim for relief. As to the statements attributed to defendant, albeit via his attorney, these statements are incapable of a defamatory meaning, and thus Plaintiff has not pled facts that entitle him to relief. As such, Plaintiff could not establish a *prima facie* case for defamation. Count I as should therefore be dismissed.

Finally, defendant submits that any statements made by his attorney are subject to the "judicial privilege." The judicial privilege is a defense raised by the defendant." *Schanne v. Addis*, 632 Pa. 545, 121 A.3d 942, 951 (Pa. 2015). The determination of whether a statement "is

absolutely privileged is a question of law for the court." *Richmond v. McHale*, 2012 PA Super 1, 35 A.3d 779, 785 (Pa. Super. Ct. 2012).[2]

"It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." *Pawlowski v. Smorto,* 403 Pa. Super. 71, 588 A.2d 36, 41 (Pa. Super. Ct. 1991).

The judicial privilege provides "immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought." *Schanne*, 121 A.3d at 947. Notably, the judicial privilege also applies to "'communications made *prior* to the institution of proceedings' if such communications were 'pertinent and material' and 'had been issued in the regular course of preparing for contemplated proceedings.'" *Greenberg v. McGraw*, 2017 PA Super 136, 161 A.3d 976, 982 (Pa. Super. Ct. 2017)(quoting *Post v. Mendel,* 510 Pa. 213, 507 A.2d 351, 356 (Pa. 1986)). "[A]ll doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief or redress sought is to be resolved in favor of pertinency and materiality." *Richmond v. McHale*, 2012 PA Super 1, 35 A.3d 779, 785 (Pa. Super. Ct. 2012).

---

[2] In the Third Circuit, if it appears from the face of the complaint that an affirmative defense applies, it may be properly raised on a motion to dismiss and the claim may be subsequently dismissed. *Cf. West Penn Allegheny Health Sys.*, *Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010)(explaining that a defendant may raise an affirmative defense in the context of Rule 12(b)(6) if the defense is apparent from the face of the complaint); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1277 (3d ed. 2017) ("When the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense . . . the matter may be disposed of by a motion to dismiss under Rule 12(b). "[W]hen it appears from a complaint that absolute privilege exists, the defense of failure to state a claim properly may be asserted to accomplish a dismissal on motion under rule 12(b)." *Garcia v. Hilton Hotels Int'l,* 97 F. Supp. 5, 9 (D.P.R. 1951) (dismissing a defamation case because an absolute privilege applied).

"[T]he [judicial] privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Id.* at 947. Importantly, the judicial privilege cannot be destroyed by abuse. *See Id.* at 947 n.3; *see also Greenberg,* 161 A.3d at 981 ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."); *Pawlowski v. Smorto*, 403 Pa. Super. 71, 588 A.2d 36, 41 (Pa. Super. Ct. 1991) ("The [judicial] privilege is absolute and cannot be destroyed by abuse.").

In viewing the well-pleaded facts in the light most favorable to the plaintiff, the statements at issue made by defendant's attorney is subject to the judicial immunity privilege and are therefore should be absolutely privileged. The allegedly defamatory statements were sent in a letter by the defendants attorney. *Id.* at ¶ 24, ¶¶ 33-34. Admittedly, the letter was sent prior to the institution of judicial proceedings, they were sent in an effort to explain defendant's position related to certain allegations against him by the publisher and adopted by plaintiff. The letter was both pertinent and material to the contemplated proceeding—a suit against defendant for fraud, and sent in the regular course of preparing for a contemplated legal proceeding. *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 356 (Pa. 1986).

It is respectfully requested this Honorable Court find that the absolute privilege of judicial immunity applies to the defendant's attorney's statements made in the letter and grant defendant's motion to dismiss plaintiff's defamation claim in Count I of the Amended Complaint.

## C.   **FRAUD**

In Count II of the Amended Complaint, plaintiff asserts a claim for the common law tort of fraud. Defendant moves to dismiss the fraud claim upon several base(s).

To prove fraud, a plaintiff must show six things: (1) the defendant made a representation; (2) which is material to the transaction at hand; (3) with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the misrepresentation; and (6) the plaintiff's resulting injury was proximately caused by that reliance. *Blumenstock v. Gibson*, 2002 PA Super 339, 811 A. 2d 1029, 1034 (Pa. Super. Ct. 2002).

Plaintiff alleges the following with respect to the fraud:  "[w]hile he worked in Dr. Pratico's lab, Dr. Giannopoulos also generated other research data intended for publication." *See* Exhibit "A" – Plaintiff's Complaint, at ¶ 12.  Plaintiff alleges that defendant represented to Dr. Pratico that "[Giannopoulos'] data was reliable for scholarly research." *Id.* at ¶ 42.

Defendant moves to dismiss the fraud count, i.e., Count II of Plaintiff's Complaint.  As a threshold matter any fraud alleged to have been committed by defendant was done to Temple University and not Dr. Pratico, individually.  As noted in the complaint:

> 4.      Dr. Praticò is a tenured Professor of Neural Sciences and the Director of the Alzheimer's Center at Temple University.

> \* \* \*

> 7.      Dr. Praticò is the principal researcher in the Praticò Lab which is part of the School of Medicine at Temple University.

> 8.      Students at Temple University use the Praticò Lab to research diseases of the brain, including those that affect memory, language, and the ability to learn.

> 9.      Dr. Praticò served as doctoral advisor to Dr. Giannopoulos during his doctoral program at Temple University.  Dr. Giannopoulos received his Ph.D. from Temple University in 2015.

> 10.      Dr. Giannopoulos used Dr. Praticò's lab and certain testing equipment that is housed in the animal facility outside of Dr. Praticò's lab to perform studies that constituted original research ("the Giannopoulos Data"), which Dr. Giannopoulos used for his doctoral dissertation at Temple University.

*Id.* at ¶ 4, ¶¶ 7-10.  It is clear that defendant was a doctoral candidate at Temple University working in the Pratico Lab, located at Temple University, for plaintiff, a Temple University Professor.  To the extent the data was represented to be reliable, the data was used for defendant's doctoral thesis at Temple University and then used by plaintiff for scholarly publications under the aegis of Temple University.  Simply stated, plaintiff is not the proper party to be asserting a fraud claim against defendant.  Count II of the Complaint should be dismissed.

Similarly, fraud is also subject to heightened pleading requirements. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.C.P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  This heightened standard "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

Defendant contends the amended complaint fails to meet the stringent pleading standards for fraud.  Plaintiff's allegations at its most basic study indicates that defendant was obtaining his doctoral degree and used data which was later found to be unreliable.  This does not rise to the level of fraud.  There is no indication in the complaint that defendant importuned plaintiff to publish his data in a scholarly journal.  All of the work performed by defendant on the trajectory to obtain his thesis was performed through 2015.  There is no indication, from the complaint that any work was done by defendant since 2015.  The amended complaint is deficient in asserting fraud.  This is simply not a case of fraud rather, at worse, incorrect data rather than purposefully misrepresenting the data.

Lastly, plaintiff originally filed his complaint in State Court on January 9, 2024.  The allegations in plaintiff's complaint relate to events occurring much earlier in time and clearly, prior to January 9, 2022.  In Pennsylvania, fraud has a two-year statute of limitations, which begins to run "at the time 'the right to institute and maintain the suit arises.'" *Beauty Time, Inc. v. VU Skin Sys., Inc.,* 118 F.3d 140, 143-44 (3d Cir. 1997) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (Pa. 1983)). However, equitable tolling "delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." *Id.* (citing *Urland v. Merrell-Dow Pharms.*, 822 F.2d 1268, 1271 (3d Cir. 1987)). If "the underlying events are based on fraud or deceit . . . . then that, without more, will toll the statute of limitations until such time as the fraud has been revealed or should have been revealed by the exercise of due diligence by plaintiffs." *Id.* at 146 (internal quotation marks omitted).

According to the Complaint, defendant received his Ph.D. from Temple University in 2015. *Id.* at ¶ 9.  The work was performed by defendant, up to and including 2015.  It was further alleged that two (2) papers published by Springer Nature Academic Publishing, Inc., were published in 2018 and 2019, respectively. *Id.* at ¶ 17(a), (b). Further, in March, 2020, the data was challenged and criticized by "Pubpeer". *Id.* at ¶¶ 22-23.  The Complaint goes on to say that plaintiff "conducted a very careful review of [defendant's] data . . ." *Id.* at ¶ 28.

Plaintiff has compromised the statute of limitations by failing to bring this lawsuit in a timely manner.  The complaint, on its face indicates that the work was done in 2015, the articles were published in 2018 and 2019 and the data was subject to scrutiny in 2020.  Clearly, plaintiff was aware, as early as 2020 there was an issue with the data.  The fact that plaintiff waited until 2023 to have a "third-party expert use[] specialized software to review" the dissertation and other

works is unavailing to toll the statute of limitations.  Plaintiff cannot argue he did not know this information until 2023 when the other information in the complaint belies this knowledge. Plaintiff knew or should have known, as early as 2020 that the data was compromised and was being questioned resulting in the ultimate removal of the published articles.  Plaintiff's amended complaint should be dismissed as violating the applicable two (2) year statute of limitations.

**D.     MOTION TO STRIKE PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES**

      **1.     Count I – Defamation**

In Count I of Plaintiff's Complaint, he seeks the imposition of attorney's fees in connection with his defamation claim.  *See* Plaintiff's Amended Complaint, at *Ad Damnum Clause*, Count I.  It is respectfully requested this Honorable Court grant defendant's motion to dismiss and strike the request for attorney's fees, as such fees are not recoverable at bar.  "[T]he parties to litigation are responsible for their own fees unless otherwise provided by statutory authority, agreement of the parties or some other recognized exception." *Equibank v. Miller*, 422 Pa. Super. 240, 619 A.2d 336, 338 (1993). No such authority exists to warrant the award of attorney's fees in this matter. Accordingly, all demands for attorney's fees should be stricken from the complaint.

      **2.     Attorney's Fees – Count II – Fraud**

In Count II of Plaintiff's Complaint, he seeks the imposition of attorney's fees in connection with his fraud claim.  *See* Plaintiff's Amended Complaint, at *Ad Damnum Clause,* Count II.  It is respectfully requested this Honorable Court grant defendant's motion to dismiss and strike the request for attorney's fees, as such fees are not recoverable at bar.  Attorneys' fees and costs are not recoverable from an adverse party in the absence of express statutory allowance, clear agreement by the parties, or some other established exception. *Shanks v.*

*Alderson,* 582 A.2d 883, 886 (Pa. Super. 1990); *Mister Donut of America 'Inc., v. Constance Plus II, Inc.,* 11 Pa.D.&C.4th 434 (Pa. Com. Pl. 1991)(motion to strike attorney's fees granted as no statutory basis for attorneys' fees nor agreement to pay fees existed).

In *Koffman v. Smith*, 453 Pa. Super. 15, 682, A.2d 1282, 1292 (1996), the Pennsylvania Superior Court observed: "[i]t is well established that a litigant is responsible for his own counsel fees absent an agreement by the parties or some other established exception. Unfortunately, there is no established exception which permits recovery of attorney fees in an action for fraud."  The Pennsylvania Judicial Code provides for counsel fees in various instances, none of which have been pleaded here. *See* 42 Pa. C.S.A, § 2503. *See also Hart v. Arnold*, 2005 PA Super 328, 884 A.2d 316, 342-43 (Pa. Super. 2005).  No such authority exists to warrant the award of attorney's fees in this matter. Accordingly, all demands for attorney's fees should be stricken from the complaint.

## CONCLUSION

Therefore, for all of the foregoing reasons, it is respectfully requested this Honorable Court sustain Defendant's Preliminary Objections to Plaintiff's Complaint grant the following relief:

1.      Count I of the Complaint alleging defamation against Defendant should be dismissed for failing to state a claim upon which relief can be granted;

2.      Count II of the Amended Complaint alleging fraud against Defendant should be dismissed for failing to state a claim upon which relief can be granted;

3.      The request for attorneys' fees in Count I of the Amended Complaint alleging defamation should be stricken; and

4.      The request for attorneys' fees in Count II of the Amended Complaint alleging

fraud should be stricken.

**LAW OFFICES OF JONATHAN J. SOBEL**


**BY:**_____
    **JONATHAN J. SOBEL, ESQUIRE**
    **1500 Walnut Street, Suite 2000**
    **Philadelphia, PA  19103**
    **(215) 735-7535**
    **(215) 735-7539**

    **Attorney for Defendant**

**DATED:  June 7, 2024**