IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOMENICO PRATICO,**<br>         **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **PHILLIP GIANNOPOULOS,**<br>         **Defendant.** | **NO. 24-2212** |

## MEMORANDUM OPINION

Defendant Phillip Giannopoulos moves to dismiss Plaintiff Domenico Praticò's Second Amended Complaint against him, arguing that it fails to plausibly allege that he engaged in defamation or fraud. Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Giannopoulos's Motion will be granted.

**I.     BACKGROUND**

According to his Complaint, well-pleaded allegations from which are taken as true, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), Praticò is a professor at Temple University, where he researches "clinical pharmacology with a special focus on the cellular and molecular aspects of cell oxidative biology and a particular interest in small molecules such as bioactive oxidized lipids." Giannopoulos graduated from Temple with a PhD in 2015. While he was at Temple, Praticò served as his advisor, and he conducted original research in Praticò's lab, which helped form the basis for his doctoral dissertation. Praticò also helped Giannopoulos publish that data, including in a journal from Springer Nature Academic Publishing ("Springer Nature") in 2018 and 2019. As part of that process, the parties communicated via email, and Praticò notified Giannopoulos that his data was being put together and that he would "be in the authorship." The first article lists Praticò and Giannopoulos as

authors, while the second article lists them and another person named Jian Chiu as authors.[1] Giannopoulos allowed the Springer Nature papers to be featured on his profile on the website ResearchGate.

In March 2020, individuals challenged the accuracy of the data underlying these articles on a website called Pubpeer.  Praticò responded by "email[ing] Dr. Giannopoulos to schedule a conversation."  Giannopoulos did not, at this point, "say anything about [the] authorship" of these papers.  Later, in 2023, further criticism of Giannopoulos's work came out.  In response to an inquiry from Springer Nature, Giannopoulos's attorney sent a letter to its Associate Editor and Publisher, which insisted that: (1) his "name was placed as the lead author [of these papers] without his consent, nor was he informed of the submission of these manuscripts;" (2) he "has never met, worked with, and cannot identify" Chiu; and, (3) he "did not receive any form of communication from the corresponding author regarding these manuscripts."  This, as far as Praticò knows, was the first time that Giannopoulos had disputed the authorship of these articles.  The feedback from third parties led Praticò to review Giannopoulos's data himself, and he concluded that "the integrity of [the] data is compromised."  This episode has led to the retraction of three papers that the parties co-authored, and Praticò has requested the retraction of four additional papers on which Giannopoulos is the first author.

Praticò alleges: (1) that Giannopoulos's statements, made through his attorney, were defamatory; and, (2) that Giannopoulos defrauded him by "represent[ing] . . . that his data was reliable for scholarly publications."

---

[1] Record of these articles and other communications are attached to the Second Amended Complaint and can be considered here because they are "explicitly relied upon" by that pleading.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted).  Their authenticity is not contested by either party.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210.

## III. DISCUSSION

### A. Defamation

> In Pennsylvania, the plaintiff in a defamation action bears the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and[,] (7) abuse of a conditionally privileged occasion.

*Pace v. Baker-White*, 432 F. Supp.3d 495, 508 (E.D. Pa. 2020) (citing 42 Pa. C.S. § 8343(a)).

Giannopoulos argues, however, that the merits of Praticò's defamation claim need not be addressed because any comments in the letter were privileged.[2]  He is correct.

"It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation."

---

[2] Judicial privilege is an affirmative defense to defamation liability. *Schanne v. Addis*, 121 A.3d 942, 951 (Pa. 2015) (other citations omitted) (citing Pa. R. Civ. P. 1030(a)).  Such a defense can be pressed in a motion to dismiss where, as here, it is "apparent on the face of the complaint." *Cf. Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citation omitted).

3

*Pawlowski v. Morto*, 588 A.2d 36, 41 (Pa. Super. 1991) (citations omitted).  "Judicial proceeding" is a capacious term, covering "not merely . . . pleadings and sessions in open court, but also . . . 'less formal circumstances, such as preliminary conferences, negotiations, and routine correspondence exchanges between counsel in furtherance of their clients' interests.'" *Agresta v. Goode*, 797 F. Supp. 399, 405 (E.D. Pa. 1992) (quoting *Pelagatti v. Cohen*, 536 A.3d 1337, 1344 (Pa. Super. 1987)).  It includes "'communications made prior to the institution of proceedings' if such communications were 'pertinent and material' and 'ha[d] been issued in the regular course of preparing for contemplated proceedings.'"  *Greenberg v. McGraw*, 161 A.3d 976, 982 (Pa. Super. 2017) (quoting *Post v. Mendel*, 507 A.2d 351, 356 (Pa. 1986)); *see also Milliner v. Enck*, 709 A.2d 417, 420 (Pa. Super. 1998) (citing Restatement (Second) of Torts §§ 586, 587 (Am. L. Inst. 1977)) ("It is clear that an allegedly defamatory communication is absolutely privileged when it is published prior to a 'judicial proceeding' as long as that communication has a bearing on the subject matter of the litigation.").

"[A]ll doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief or redress sought is to be resolved in favor of pertinency and materiality."  *Pawlowski*, 588 A.2d at 41 (citing *Greenberg v. Aetna Ins. Co.*, 235 A.2d 576, 578 (Pa. 1967)).  At the same time, however, "[t]he bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered."  *Ralston v. Garabedian*, 676 F. Supp.3d 325, 342 (E.D. Pa. 2021) (quoting *Schanne v. Addis*, 121 A.3d 942, 950 (Pa. 2015)).  As the party asserting judicial privilege, Giannopoulos bears the burden of establishing its applicability here.  *Blocker v. Cmty. Educ. Ctrs., Inc.*, 2014 WL 1348959, at *8 (E.D. Pa. Apr. 7, 2014) (citation omitted).

Giannopoulos argues that the privilege covers his attorney's statements because "they

4

were sent in an effort to explain [his] position related to certain allegations against him" and contemplated "a suit against [him] for fraud." Praticò counters that no such judicial proceeding has been identified: at the time Giannopoulos's lawyer sent the letter, Praticò had not filed a lawsuit yet, so no immunity can be applied here.

The privilege applies here even though the letter does not facially contemplate a proceeding between the two parties. *Buschel v. MetroCorp.*, 957 F. Supp. 595 (E.D. Pa. 1996), is instructive. In that case, a journalist and *Philadelphia Magazine* had gotten into a dispute over whether he had orally agreed to sell the publication rights to an article. *Id.* at 596. The journalist signed a written contract with another magazine, *Esquire*, for rights to the piece. *Id.* In the course of this dispute, counsel for *Philadelphia Magazine* wrote a letter to the journalist and to *Esquire* that "made clear that *Philadelphia* would pursue its legal rights against [the plaintiff] . . . arising from [his] contractual arrangement with *Philadelphia*" and referenced a statement by *Philadelphia Magazine*'s editor that characterized the plaintiff's decision to contract with *Esquire* as "a moral transgression against me and my magazine." *Id.* at 596-97. The author alleged that these statements amounted to defamation because they accused him "of breaching a contract and committing the crime of conversion" and "of a breach of journalistic ethics." *Id.* at 597.

Applying *Post* and the Restatement of Torts, the court concluded that the judicial privilege applied. *Id.* at 598. These letters "were both relevant and material to *Philadelphia*'s contemplated litigation" because they: (1) "informed each potential defendant . . . of [its] belief in the existence of its oral contract;" and, (2) "served to inform each recipient of the factual basis upon which *Philadelphia* would rely to prove the oral contract." *Id.*

Here, as in *Buschel*, Giannopoulos's lawyer's letter lays out his legal position and the

5

factual basis for it.  *See id.*  In response to serious allegations—according to the Second Amended Complaint, academic fraud—the letter exclaims any responsibility for any possible misconduct because Giannopoulos did not "agree to be accountable for any/all aspects of" the at-issue articles' publication.  In support of that position, Giannopoulos made three specific factual assertions, which form the basis for Praticò's defamation claim.  Therefore, as in *Buschel*, those statements are entitled to judicial privilege.  The defamation claim therefore will be dismissed without prejudice.

### B. Fraud

Giannopoulos argues that Praticò's fraud claim fails because, among other reasons, it is barred by Pennsylvania's statute of limitations.  The running of a statute of limitations, like the application of the judicial privilege, is an affirmative defense.  *Wisniewski*, 857 F.3d at 157.  It can be pressed here because the defense is "apparent on the face of the complaint" from the chronology that the Second Amended Complaint presents.  *Id.* (citation omitted).

Fraud claims in Pennsylvania are governed by a two-year statute of limitations.  42 Pa. C.S. § 5524(7); *see Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 275 (Pa. Super. 2005), *abrogated on other grounds by Nicolaou v. Martin*, 193 A.3d 880 (Pa. 2018).  The limitations period runs from "the time 'the right to institute and maintain the suit arises.'"  *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 143-44 (3d Cir. 1997) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).  It thus is subject to equitable tolling, *inter alia*, "until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause."  *Id.* at 144 (quotation omitted); *see generally Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) (explaining contexts in which Pennsylvania courts toll the statute of limitations).

Giannopoulos argues that, because the Second Amended Complaint presses a fraud claim

based on "work [that] was done in 2015," "articles . . . published in 2018 and 2019," and "data [that] was subject to scrutiny in 2020," the two-year limitations period has run. In response, Praticò argues that he originally defended Giannopoulos's work and only discovered any inaccuracies after hiring an independent reviewer in 2023. But the Complaint alleges that Praticò learned about the alleged problems with Giannopoulos's data three years earlier in 2020. Once Pubpeer posted concerns about the data, he emailed Giannopoulos "to schedule a conversation." Considering such allegations, Praticò at least should have known through the exercise of reasonable diligence about the alleged falsity of Giannopoulos's data more than two years ago. *Beauty Time*, 118 F.3d at 144. His fraud claim therefore is barred by Pennsylvania's two-year statute of limitations and will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Giannopoulos's Motion to Dismiss will be granted in part and denied in part. An appropriate order follows.

**BY THE COURT:**

**/S/Wendy Beetlestone, J.**
_____
**WENDY BEETLESTONE, J.**

**Date: 08/22/24**